**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DAVID WEINBACH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VOLVO CAR USA, LLC, a Delaware limited liability corporation, and VOLVO CARS OF NORTH AMERICA, LLC, a Delaware limited liability corporation, and related entities,

Defendants.

Case No. 6:26-cv-06088-EAW

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, DAVID WEINBACH (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by undersigned counsel, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This is a consumer class action arising out of Defendants' manufacture and sale of over 400,000 defective vehicles which were recalled due to defects with the vehicles' rearview camera displays.

2. Plaintiff brings this lawsuit on behalf of himself and a proposed class of past and present owners and lessees of the following defective Volvo vehicles (collectively the "Class Vehicles") marketed, distributed, sold, warranted, and serviced by Defendants:

VOLVO/XC40/2021-2025
VOLVO/S90/2022-2025
VOLVO/V90/2022
VOLVO/XC60/2022-2025
VOLVO/V90CC/2022-2025
VOLVO/XC90/2023-2025

VOLVO/V60CC/2023-2025
VOLVO/V60/2023-2025
VOLVO/S60/2023-2025
VOLVO/C40BEV/2022-2024
VOLVO/EC40/2025
VOLVO/EX40/2025

3. The Class Vehicles' rearview camera display, a critical safety component, fails to operate or operate properly when the defective vehicles are placed in reverse—leaving them dangerous and noncompliant with the Federal Motor Vehicle Safety Standard no. 11, "Rear Visibility" (the "Defect").[1]

4. These vehicles were advertised, sold, and delivered across the United States—including in New York—without adequate warnings to purchasers or operators of the vehicles and without safeguards to prevent the malfunctioning and failure of the vehicles' rearview camera software and display.

5. These malfunctions are due to software and hardware defects and failures in the design, development, testing, and validation of Volvo's Android Automotive Operating System ("AAOS"). Plaintiff seeks relief for himself and those similarly situated.

6. Defendants' failure to disclose the Defect at the time of sale—and their refusal to assume responsibility for the damage and dangers inherent in operating the defective vehicles—constitutes consumer deception and unjust enrichment. Plaintiff and Class Members would not have purchased the vehicles or would have paid significantly less had they known of defects and limited recourse available.

7. Defendants' conduct is a violation of the Magnuson-Moss Warranty Act ("MMWA"), is a breach of express warranties and implied warranties of merchantability,

[1] https://www.nhtsa.gov/?nhtsald=25V282000 (last accessed January 20, 2026)

constitutes fraudulent concealment and unfair and deceptive business practices in violation of New York General Business Law §§ 349 and 350, and resulted in unjust enrichment to Defendants.

## FACTUAL BACKGROUND

8. Defendants have sold hundreds of thousands of the Class Vehicles across the United States and in New York. Yet, the Class Vehicles suffered from a myriad of failures to its "infotainment" system which has not been remedied despite multiple recalls. These failures render the Class Vehicles unsafe and worthless than the Vehicles promised and warranted.

9. The infotainment system is a vehicle's central digital hub, combining information (navigation, vehicle diagnostics) and entertainment (audio, video) *via* a touchscreen, voice commands, or steering wheel controls. It not only controls ancillary systems, such as the car's audio system, but also key safety features to such reverse cameras, collision detection interfaces, and other related systems.

10. Defendants have represented that the Class Vehicles they manufacture, market, sell, and service are safe[2] and have touted earning Top Safety ratings from the Insurance Institute of Highway Safety.[3] Defendants boast that "Safety is in our DNA" and that they "develop cars to be equally safe for everyone".[4] Safety systems that are accessed through the infotainment system are key to Defendants' marketing efforts.

11. In April 2021, Defendants began receiving internal reports that the rear-view camera image would malfunction and disappear in AAOS-based infotainment system vehicles.[5] This rear-view camera is accessed and displayed on the Class Vehicles' infotainment system.

---

[2] https://www.volvocars.com/us/safety/overview/ (last visited January 21, 2026)
[3] *See e.g.* https:www.volvocars.com/us/media/press-releases/8ECACFDB600670E3/ (last visited January 21, 2026); https://www.volvocars.com/us/media/press-releases/A053C568FCE506DF/ (last visited January 21, 2026)
[4] https://www.volvocars.com/us/safety/legacy/ (last visited January 21, 2026)
[5] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V282-3568 (see p.5 last accessed January 21, 2026)

12. On March 24, 2025, Defendants met with the National Highway Traffic Safety Administration ("NHTSA") where the issues with the malfunctioning rear camera monitors were addressed. Two days later, on March 26, 2025, NHTSA escalated its investigation to the Critical Concern Action Process, where the issue was "concluded as potentially critical" and the Critical Concern Management Team (CCMT) initiated a technical investigation to conclude customer symptom, root cause and other issues.[6]

13. Federal law prohibits the sale or import of any motor vehicle manufactured on or after the date of an applicable motor vehicle safety standard. 49 U.S.C. § 30112. Federal Motor Vehicle Safety Standard ("FMVSS") No. 111, 49 C.F.R. § 571.111, requires all new motor vehicles under 10,000 pounds manufactured on or after May 1, 2018, to come equipped with rear visibility technology. This regulation mandates that rear-view systems provide a 10-foot by 20-foot field of view directly behind the vehicle to reduce back over accidents. Currently, this requirement is met with the use of a rear-mounted video camera and an in-vehicle visual display.

14. This requirement is a critical safety concern. NHTSA research found 292 fatalities and 18,000 injuries (3,000 of which are judged to be incapacitating) resulting from backover incidents every year. Of those, 228 fatalities and 17,000 injuries were attributed to backover incidents involving passenger vehicles under 10,000 pounds. And SUVs and large vehicles, which many of the Class Vehicles are, were especially responsible for these backover incidents and most of the fatalities. It was these considerations that informed the development of FMVSS No. 111.

15. In the Class Vehicles, like most other vehicles, Defendants satisfied FMVSS No. 111 with a rear-mounted video camera that displayed to the Class Vehicles' infotainment system. However, when the Class Vehicles' infotainment system did not work properly, drivers could not

see in the area immediately behind their Vehicle when backing up, posing a significant safety issue.

16. On April 30, 2025, the CCMT's technical investigation was completed and the CCMT team made the decision to start preparation and launch a NHTSA recall (hereinafter "the April Recall").[6] The April Recall includes the following Class Vehicles that were manufactured, marketed, and sold by Defendants:

Makes/Models/Model Years:

VOLVO/XC40/2021-2025
VOLVO/S90/2022-2025
VOLVO/V90/2022
VOLVO/XC60/2022-2025
VOLVO/V90CC/2022-2025
VOLVO/XC90/2023-2025
VOLVO/V60CC/2023-2025
VOLVO/V60/2023-2025
VOLVO/S60/2023-2025
VOLVO/C40BEV/2022-2024
VOLVO/EC40/2025
VOLVO/EX40/2025

17. The April Recall states that the rearview camera image may not display when the vehicle is placed in reverse and, as such, the vehicles affectively fail to comply with the requirements of FMVSS No. 111. Consumers noted that the rearview would camera freeze, fail to display, or show a black screen when in reverse. It was believed that this issue stems from the software associated with the Class Vehicles' infotainment system. However, Defendants have also had significant issues with the Class Vehicles' infotainment system, due to lower end processing chips being used. Indeed, Defendants even offer consumers an upgrade to a higher end processing chip, to solve issues related to the Class Vehicles' infotainment system slowing down or freezing.

[6] *Id*.

18. Despite the April Recall and knowledge of the defects and safety issues affecting the Class Vehicles, Defendants continued to market and sell the Class Vehicles without either repairing or correcting the defective condition or providing notice to owners or potential purchasers of the Class Vehicles. On May 8, 2025, as part of the April Recall, Defendants issued a software update, by a dealer or through an over-the-air ("OTA") transmission, to resolve this issue. But, the April Recall, NHTSA ID Number: 25V282000 (25V-282), did not work.[7] And the Defect persisted.

19. Indeed, the April Recall only made issues worse. On June 12, 2026, the NHTSA noticed another recall regarding the all-electric versions of the Class Vehicles completely losing their ability to brake while going downhill.[8] Due to this defect, consumers were informed that they should not drive their car and to turn off regenerative braking until their car's software is updated with the recall remedy. The NHTSA specifically found that "[t]he defect originates from the over-the-air recall remedy for recall 25V-282, which addressed rearview camera failures while backing up."[9]

20. Given the persistence of the Defect and the subsequent braking issues, Defendants were forced to admit that the April Recall failed. On December 23, 2025, Defendants again recalled the Class Vehicles for the same Defect (the "December Recall"). The NHTSA noted that the December Recall, NHTSA ID Number: 25V908000 (25V-908), was meant to resolve the issue of the Class Vehicles "rearview camera image may not display[ing] when the vehicle is placed in reverse" and that Class Vehicles "fail to comply with the requirements of Federal Motor Vehicle

[7] https://static.nhtsa.gov/odi/rcl/2025/RCAK-25V282-9587.pdf (last visited April 2, 2026)
[8] https://www.nhtsa.gov/press-releases/volvo-recall-urgent-brake-failure-warning-select-vehicles (last visited April 2, 2026)
[9] *Id.*

Safety Standard number 111."[10] The NHTSA even noted that the December Recall "replaces previous NHTSA recall number 25V282. Vehicles previously repaired under recall 25V282 will need to have the new remedy performed."[11] Overall, the December Recall included 413,151 potentially affected vehicles.

21. Yet, even after this third December Recall, the Defect still persists. The Class Vehicles still experience the Defect. Indeed, Plaintiff still experiences problems with the infotainment system. This is likely because even with software improvements, the underlying processors in the infotainment system are still deficient. Instead of making the newer processing chips available to consumers through a recall, Defendants force consumers to purchase these processors at a significant markup.

22. Defendants should have never sold this car to Plaintiff. On or about November 22, 2025, Plaintiff purchased a 2023 Volvo XC60 at an authorized Volvo dealership in Rochester, New York. He was not informed about the issues with the infotainment system, particularly the rear-view camera.

23. Shortly after purchasing Plaintiff's XC60, the central infotainment system of the vehicle started to freeze, and the rear-view camera display would malfunction and disappear. Just as described in the April Recall.

24. Defendants were aware that the April Recall did not resolve the problem and had caused additional issues with the electric versions of the Class Vehicles. Indeed, Defendants knew either immediately before (through their internal testing) or, at least, immediately after the April Recall (through continued complaints) that the April Recall did not work. Nonetheless, Defendants continued to sell the Class Vehicles. This is a direct violation of federal law, and the

---

[10] https://static.nhtsa.gov/odi/rcl/2025/RCAK-25V908-9575.pdf (last visited April 2, 2026)
[11] *Id.*

minimum FMVSS, which represent the minimum safety requirements for vehicles sold in the United States. Accordingly, Defendants breached both applied and expressed warranties. In selling the Class Vehicles, Defendants represented that the Class Vehicles were of merchantable quality and met minimum safety requirements. However, the Class Vehicles did not, and do not, meet these standards.

25. Despite the multiple recalls, knowledge of the defects and dangers, and the resulting safety and transferability issues, Defendants have failed to provide proper and adequate notice to Plaintiff or the Class Members of the nature and consequences of the Defect.

26. Even after multiple recalls, Defendants have neither provided nor promised to provide Plaintiff or the Class Members an effective remedy, repair, fix, or financial reimbursement or support, even though their defective vehicles pose a dangerous risk when operated and are illegal to sell in their defective condition.

27. To date, Volvo has failed to remedy this safety Defect under its warranty, forcing Class Vehicle owners to continue operating vehicles with the Defect. Volvo has not provided Class Vehicle owners or third-party dealers with an effective repair, and the safety recalls issued to date have not corrected the underlying problem.

28. Despite having pre-sale knowledge of the Defect, Defendants failed to disclose it to Plaintiff and other Class Members at the time of purchase or lease. Had they done so, Plaintiff and Class Members would not have purchased the Class Vehicles or would have paid substantially less for them.

29. Defendants are large and sophisticated corporations that have been in the business of producing, manufacturing, marketing, and selling motor vehicles for consumer use for many years, including producing and manufacturing the Class Vehicles.

30. Defendants are in the unique and superior position of knowing how the Class Vehicles are manufactured and the steps needed to produce safe vehicles. Through their own testing, Defendants were aware that the Defect existed and was more resolved by the multiple recalls discussed herein. Consumers are unable to discovery the Defect at the time of purchase, due to its intermitted nature of the Defect, and the consumers limited access to Class Vehicles prior to purchase. Additionally, once the defect became public, consumers were informed that it was resolved through multiple recalls. However, Defendants, in their exclusive knowledge, knew this not to be true. Accordingly, Defendants possess superior and exclusive knowledge regarding the risks involved in the production and manufacturing of the Class Vehicles.

31. The fact that the rear camera monitors may malfunction and quit working is not information that is reasonably accessible to Plaintiff and the Class Members. The only possible way for Plaintiff and the Class Members to obtain such information would be to conduct their own independent testing on the Class Vehicles prior to purchasing them. No reasonable consumer commissions independent testing of rear camera monitors before purchasing a vehicle.

32. Defendants have a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the Class Vehicles. Additionally, Defendant has a duty not to sell cars that do not meet minimum safety standards.

33. Therefore, Defendants' deceptive omissions regarding the Class Vehicles' malfunctioning rear camera functionality are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

34. By omitting notice to purchasers that the Class Vehicles are defective in that the rear camera may fail throughout the Class Period, Defendants knew that those omissions are

material to consumers since they would not purchase vehicles which have malfunctioning rear camera monitors or would have paid substantially less for them.

35. Defendants' deceptive omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

36. Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading omissions.

37. Defendants' false, misleading, and deceptive omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

38. In making the false, misleading, and deceptive omissions described herein, Defendants knew and intended that consumers would pay a premium for the Class Vehicles marketed as they were by Defendants—without the defective and malfunctioning rear camera monitors—over comparable vehicles not so marketed.

39. Defendants have and will continue to benefit from their unlawful conduct—by selling more vehicles, at a higher price, and avoiding warranty obligations—while Class Members continue to be harmed at the point of sale.

40. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representation and omission, Defendants injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for the Class Vehicles that were not what Defendants represented;

b. Paid a premium price for the Class Vehicles that were not what Defendants represented;

c. Were deprived of the benefit of the bargain because the Class Vehicles they purchased were different from what Defendants warranted;

d. Were deprived of the benefit of the bargain because the Class Vehicles they purchased had less value than what Defendants represented;

e. They purchased and operated vehicles that were of a different quality than what Defendants promised;

f. Were denied the benefit of the properties of the Class Vehicles Defendants promised; and

g. Have incurred costs and expenses, and will continue to incur costs and expenses, for software updates and upgrades to attempt to repair the Defect.

41. Had Defendants not made the false, misleading, and deceptive omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Class Vehicles they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Class Vehicles.

42. Defendants have not issued any bulletins or instructions to their dealerships regarding the Defect, have not offered to their customers a suitable repair or software replacement related to the Defect free of charge, and have not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Defect.

43. To remedy Defendants' unlawful conduct, Plaintiff seeks damages and restitution from Defendants for himself and on behalf of putative Class Members, as well as Defendants' appropriate notification about the Defect to the putative class.

## JURISDICTION AND VENUE

44. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 Class Members; (2) Plaintiff is a citizen of New York and Defendants Volvo Car USA, LLC ("VCUSA") and Volvo Cars of North America, LLC ("VCNA") are Delaware limited liability companies

headquartered in New Jersey; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

45. This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the state of New York, and supply goods within the state of New York.

46. Venue is proper because Plaintiff and many Class Members reside in the Western District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

47. Plaintiff David Weinbach is a citizen and resident of Monroe County, New York. Plaintiff purchased the Class Vehicle, a 2023 Volvo XC90, in person at Volvo Cars Rochester, a brick and mortar Volvo dealership, in 2025 in Monroe County, New York.

48. Defendant VCUSA is a Delaware limited liability corporation headquartered in Rockleigh, New Jersey. It is a wholly owned subsidiary of Volvo Car Group and/or Volvo Car Corporation, a multinational automobile manufacturer headquartered in Sweden. VCUSA's sole member is Volvo Cars of North America.

49. Defendant VCNA is a Delaware limited liability company with its headquarters located in New Jersey. VCNA is a wholly owned subsidiary of Volvo Car Group and/or Volvo Car Corporation, which is a Swedish corporation with its principal place of business in Gothenburg, Sweden, and which manufactures Volvo-branded cars. VCNA provides marketing, sales, distribution, parts service and training, and support for Volvo brand passenger cars in the United States.

## CLASS ALLEGATIONS

50. Plaintiff brings this matter on behalf of himself and those similarly situated. Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent the following Nationwide class:

> All persons or entities who purchased or leased any 2021 to 2025 Volvo XC40, 2022 to 2025 Volvo C40, 2022 to 2025 Volvo XC60, 2022 to 2025 Volvo XC90, 2022 to 2025 Volvo S60, 2022 to 2025 Volvo S90, 2022 to 2025 Volvo V60, 2022 to 2025 Volvo V90, 2025 Volvo EX30, 2025 Volvo EX40, and 2025 Volvo EX90 vehicles in the United States of America (the "Class") (excluding Defendants and their agents or employees).

51. As detailed in this Complaint, Defendants orchestrated deceptive marketing practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

52. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Class Vehicles in the state of New York at any time during the Class Period (the "New York Subclass").

53. The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

54. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

55. Numerosity: Class Members are so numerous that joinder of all Members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

56. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether the Class Vehicles suffer from the Defect;

b. Whether the Defect was a material defect;

c. Whether the Defect creates an unreasonable safety hazard;

d. Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Class Vehicles;

e. Whether Defendants knew or reasonably knew of the Defect before they sold or leased the Class Vehicles to the Members of the Class;

f. Whether Defendants had and have a duty to disclose the Defect to Plaintiff and the Class;

g. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Class Vehicles;

h. Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning their Class Vehicles;

i. Whether Defendants' false and misleading statements and omissions concerning their Class Vehicles were likely to deceive the public;

j. Whether Plaintiff and the Class are entitled to equitable relief;

k. Whether Defendants breached express warranties and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment;

l. Whether Defendants violated New York General Business Law §§ 349 and 350; and

m. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

57. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased or leased Defendants' defective Class Vehicles. Plaintiff is advancing the same legal claims and theories and is seeking the same relief under the same causes of action as the other Class Members.

58. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his claims are common to all Members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

59. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

60. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among the Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action;

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false advertising to purchase their Class Vehicles; and

j. Defendants have acted, and refused to act, on grounds generally applicable to the Class, making it appropriate for final equitable relief with respect to the Class as a whole.

61. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual Members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (On Behalf of Plaintiff and the Class)

62. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

63. The MMWA, 15 U.S.C. § 2301(3), defines a "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes."

64. The Class Vehicles are consumer products within the meaning of the MMWA.

65. Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

66. Defendants are each a "supplier" and "warrantor" as those terms are defined in 15 U.S.C. § 2301(4) and (5), because they are engaged in the business of manufacturing, distributing, and warranting the Class Vehicles.

67. Defendants issued written warranties in connection with the sale and lease of the Class Vehicles, including a New Vehicle Limited Warranty that expressly warrants that Volvo will repair or replace defects in materials or workmanship. Additionally, Defendants warrant that the Class Vehicles are legally sold in the United States and meet minimum federal safety requirements.

68. The rear camera Defect constitutes a defect in materials and/or workmanship that substantially impairs the use, value, and safety of the vehicle.

69. Plaintiff's vehicle manifested the Defect during the warranty period, and Defendants have failed to remedy the Defect despite multiple repair opportunities.

70. Defendants' failure to repair the Defect constitutes a breach of written warranty under the MMWA, entitling Plaintiff and Class Members to damages, including diminution in value, loss of use, and other consequential damages, pursuant to 15 U.S.C. § 2310(d)(1).

71. Plaintiff and Class Members seek all remedies permitted under the MMWA, including actual damages, equitable relief, and attorneys' fees.

**SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

72. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73. Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

74. Defendants' conduct violated, *inter alia*, state law by manufacturing, advertising, marketing, and selling their Class Vehicles while misrepresenting and omitting material facts.

75. Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling the Class Vehicles at the expense of, and to

the detriment or impoverishment of, Plaintiff and Class Members and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

76. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Class Vehicles, which were not as Defendants represented them to be.

77. Accordingly, it is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

78. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments so that Plaintiff and Class Members may seek restitution.

**<u>THIRD CAUSE OF ACTION</u>**
**Fraudulent Concealment**
**(On behalf of Plaintiff and the Class)**

79. Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

80. By affirmatively misrepresenting the Class Vehicles as reliable and safe, and by failing to disclose and concealing the defective nature of the Class Vehicles' rear camera and AAOS-based system from Plaintiff and Class Members, Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

81. Defendants knew that the Class Vehicles' rear camera monitors and AAOS-based system suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

82. Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles' AAOS-based rear camera monitor system and/or the

associated repair costs because:

a) Defendants were in a superior position to know the true facts about the safety defect contained in the Class Vehicles' AAOS-based system;

b) Defendants knew that the Class Vehicles suffered from an inherent defect and were not suitable for their intended use or met minimum federal safety requirements;

c) Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their AAOS-based systems have a dangerous Defect until after they purchased the Class Vehicles; and

d) Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the Defect.

83. Defendants still have not made full and adequate disclosures and continue to defraud consumers by concealing material information regarding the Defect and the performance, safety and quality of Class Vehicles.

84. The facts concealed or not disclosed by Defendants to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

85. Plaintiff and Class Members relied on Defendants to disclose material information they knew, such as the defective nature of rear camera systems in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendants disclosed this information.

86. By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

87. The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

88. Had Plaintiff and other Class Members known that the Class Vehicles suffer from the Defect, they would not have purchased the Class Vehicles or would have paid less for them.

89. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Defect. That is the reasonable and objective consumer expectation for vehicles.

90. As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement parts and are worth less money because of the Defect.

91. Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

92. Motivated by profit, Defendants acted maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being. Upon information and belief, Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

93. Defendants have profited and benefited from Plaintiff's and Class Members' purchase of Class Vehicles containing the rear camera Defect. Defendants have voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct alleged herein, Plaintiff and Class Members were not receiving vehicles of the

quality, nature, fitness, or value that had been represented by Defendants, and that a reasonable consumer would expect.

94. Defendants have been unjustly enriched by their fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendants to retain these profits and benefits, and they should be required to make restitution of their ill-gotten gains resulting from the conduct alleged herein.

95. Plaintiff seeks damages and injunctive and equitable relief for himself and for the Class.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and the Class)**

96. Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

97. Defendants are merchants with respect to motor vehicles.

98. The Class Vehicles were subject to implied warranties of merchantability running from the Defendants to Plaintiff and to Class Members.

99. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

100. Defendants breached the implied warranty of merchantability in that the Class Vehicles suffer from the Defect referenced herein and thus were not in merchantable condition when Plaintiff and Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles were

purchased or leased to be used.

101. Specifically, the Class Vehicles suffer from a Defect—a defective AAOS-based system that freezes, crashes, or becomes unresponsive causing the loss of critical vehicle displays and safety functions including the federally mandated rear-view camera and other driver-assistance features—thereby impairing the driver's ability to safely operate the vehicle and rendering the Class Vehicles unsafe and unlawful to sell and operate.

102. As a result of Defendants' breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## FIFTH CAUSE OF ACTION
**Breach of Express Warranty**
**(On behalf of Plaintiff and the Class)**

103. Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

104. In connection with the sale or lease of the Class Vehicles, Defendants provided Plaintiff and Class Members with their New Vehicle Limited Warranty where Defendants promised to repair defective parts within 48 months or 50,000 miles in service, whichever comes first. Additionally, Defendants warrant that the Class Vehicles are legally sold in the United States and meet minimum federal safety requirements.

105. Plaintiff and Class Members relied on Defendants' warranty when they agreed to purchase or lease the Class Vehicles, and Defendants' warranty was part of the basis of the bargain.

106. Plaintiff and Class Members submitted their vehicles for warranty repairs as referenced herein. Defendants failed to comply with the terms of the express written warranty

provided to each Class Member, by failing to repair the Defect under the vehicle's warranty within a reasonable period of time as described herein.

107. Plaintiff and Class Members have given Defendants reasonable opportunity to cure said Defect, but Defendants have been unable and/or have refused to do so within a reasonable time.

108. As a result of said nonconformities, Plaintiff and Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

109. Plaintiff and Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff and Class Members' acceptance of the Class Vehicles.

110. Plaintiff and Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Defect.

111. As a direct and proximate result of the willful failure of Defendants to comply with their obligations under the express warranty, Plaintiff and Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## SIXTH CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

112. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

113. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

114. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendants.

115. There is no adequate remedy at law.

116. Defendants misleadingly, inaccurately, and deceptively advertise and market their Class Vehicles to consumers.

117. Defendants' improper consumer-oriented conduct—selling their Class Vehicles without disclosing the defective condition of the vehicles' rear camera monitors and associated safety risks when operating the Class Vehicles—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendants' Class Vehicles.

118. Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

119. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Class Vehicles that were misrepresented.

120. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

121. Defendants' advertising and Class Vehicles' marketing regarding safety and other features induced Plaintiff and the New York Subclass Members to buy Defendants' Class Vehicles.

122. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of GBL § 349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

123. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

124. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

125. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

126. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

127. Defendants' marketing and advertisements contain untrue and materially misleading statements and omissions concerning their Class Vehicles inasmuch as they omit

disclosure of the potential safety risks associated with the Class Vehicles due to their rear cameras propensity for malfunction and/or failure.

128. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the vehicle information, marketing, and advertising and purchased Class Vehicles that were defective, unsafe to operate, and illegal to sell.

129. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

130. Defendants' advertising and marketing induced Plaintiff and the New York Subclass Members to buy Defendants' Class Vehicles.

131. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

132. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

133. Defendants made the material omissions described in this Complaint in their advertising and on the Class Vehicles' information materials and manuals.

134. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Class Vehicles were and continue to be exposed to Defendants' material misrepresentations.

135. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) An Order declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order awarding monetary damages, restitution damages, and treble damages;

(c) An Order awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) An Order awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) An order requiring disgorgement and awarding Plaintiff and the Class restitution, and/or other equitable relief as the Court deems proper;

(f) An Order that Defendants establish a court-supervised program to remedy and repair the Class Vehicles;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: April 14, 2026

**SULTZER & LIPARI, PLLC**

By: /s/ Jason P. Sultzer______________

Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*